We will hear argument first this morning in Case 23-7483, Esteras v. United States. Mr. Grostek? Mr. Chief Justice, and may it please the Court, in Section 3583E, Congress listed factors the courts must consider when terminating, modifying, or revoking supervised release and omitted the factors that it intended to preclude. Most important here is Section 3553A2A's retribution factors. 3553A expressly states that A2's four subsections are the purposes of sentencing, which courts must satisfy when imposing prison, a fine, or probation. Courts have wide discretion about what to consider and how to fulfill those purposes, but they do not have discretion about what purposes to satisfy. In 3583E, Congress was surgical and removed one of those purposes, retributive punishment under A2A. That was different from every other sentencing option, including the otherwise identical language in the probation statute. Congress thereby precluded courts from considering A2A's retributive purposes in the supervised release context, as this Court recognized in Tapia regarding the identical list in Subsection C. The Senate report confirms what we see in the text. Under Subsection C, courts, quote, may not, supervised release, quote, may not be imposed for purposes of punishment. And the identical list in Subsection E has the same meaning. That also fits with the history of the statute. When Congress abolished parole, it created supervised release to fulfill the rehabilitative purposes following a prison sentence that satisfies A2A. Congress gave courts tools to adjust supervision, such as extending or modifying, but only for the limited purposes listed in 3583E. Congress did not add A2A to that list in later amendments when it added the revocation tool and when it added additional factors to consider. Congress thus precluded courts from relying on A2A in the supervised release context. I welcome the Court's questions. How do you square your argument with provisions that more expressly limit consideration of other sentencing factors? What Congress did here was rely on a well-established mechanism for excluding factors, which was the negative implication canon. And in particular, there's two aspects of that that I believe put that implication at the highest here. The first, as this Court noted, I believe most recently in Johnson v. Guzman-Chavez, when Congress specifies one item from a list of an associated group or series, it excludes those that it does not mention. Here, we don't just have an associated group or series. We have a defined list. We know the exact unifers. So that puts that associated group or series implication at its highest point. The second, as this Court said, for example, in Bittner, when Congress includes language in one statute but omits it in a neighbor, that also brings the negative implication canon to the fore. And here, we have, again, multiple neighbors where A2A is listed in an otherwise identical language in the probation statute. So again, that's at its highest there. And one further point, Congress did actually remove two factors from 3583E, the second being A3, the kinds of sentences available. If that were also permissive, as the government contends, that would be nonsensical. Courts could or could not at their option consider other kinds of sentences. So when we put all of those things together, we believe that the negative implication canon here is at its highest, and Congress thus excluded the A2A factors. How do you – how precise is the split? I mean, let's say under C, the judge says, I have to consider what's necessary to protect the public from further crimes, right? And because it was such a serious offense and there was no respect for the law, I'm going to do this or that. Is that acceptable or not? I believe that would be acceptable because the judge specifically tied it to a permissible factor. Even though in doing so, he recited an impermissible factor. I believe so, and I do understand Your Honor's question, and I believe that that puts – that's the most puzzling thing about what Congress did here. But I also believe Congress solved that puzzle for us in the text, because Congress must have known when they drafted the statute that there was the possibility that a reader could see overlap or surplusage. And yet it still did two things. In 3553A, it listed the factors in separate subsections. And then in 3583E and C, it obviously excluded one of those. So I believe what Congress was directing is focus on the permissible factors. Obviously, we don't need to flyspeck every word that a court uses, and as long as the district court makes clear it's relying on a permissible factor, that would be permissible. Let me give you another example. Under the statute, the judge must consider the nature and circumstances of the offense. But on your reading of the statute, the judge may not consider the seriousness of the offense. And how is a judge supposed to do that? Let me give you an example. The offense is a bank robbery. $50,000 is stolen in the robbery. The robber terrorizes the bank employees and the clients who were present in the bank at the time, and one of the clients has a heart attack. So how is a judge going to consider the nature and circumstances of that offense without considering the severity of the offense? Understood, Your Honor. And what I would point to again is in the text of the statute, I believe by splitting those two factors out, identifying the nature and circumstances was talking about the type of offense involved, the circumstances that surrounded it, many of the facts that Your Honor just pointed to. Those facts allow a court to make a judgment about the seriousness of the offense if that's permissible. But those facts also allow a court to make judgments about other things, like the need to protect the public, the need to deter. And so when Congress in A2A specifically said, consider the need to reflect the seriousness of the offense, that points to the retributive purpose. And so what Congress was doing there is saying, consider those facts, and then how you use those facts is what we direct in A2A. I'm sorry. I don't really understand the answer. I just don't see the difference between the nature and circumstances of the offense and the severity of the offense. Let me ask you this as to where your argument leads. It could mean that there's a violation if I give you three possibilities. Maybe there are more, but I'll give you three. One, there's a violation if the judge refers by name to the particular statutory provision that he can't consider. That's number one. Number two is that it's a magic words test. So there's a violation if the judge says anything, uses the word seriousness of the offense, respect for the law, provide just punishment for the offense. Three is the reviewing court has to look at the essence of what the judge is doing. And if the reviewing court thinks that the essence goes to the prohibited factor, the factor you think is prohibited, there's a violation. Which one is it? Your Honor, I believe it would be closest to the second, although I'd like to explain further. The most important thing here is that district courts orient their decision-making around what Congress directed. Well, I think those are the three choices. So is it a magic words test? Is the judge okay if the judge doesn't use the magic words? Or do you look beyond that? I think we look, and the reason, I know the magic words is something I'm not supposed to say, right? And yet I indicated that anyway. And this is my reasoning. The first is, again, the most important thing is that district courts direct their analysis to the factors that Congress indicated they should direct to. How a reviewing court reviews that is going to be based on the words that the court uses. That's true in every context on appeal. But the words that a court uses in this context are for a purpose. And HUA's purpose, as this court again recognized in Tapia, was about that retributive purpose.  One last try. You know, in reading your brief, I couldn't help thinking how this would go over with the trial judges I used to talk to all the time. They want to know, what am I supposed to do or what can't I do? And I don't know. Which of the three is it? Am I safe if I just don't use the magic words? I don't cite the statute? I think what courts need to do is direct their analysis towards deterring, protecting the public, and rehabilitation. And is that because we're talking about supervised release? That's exactly right. I sort of think we have to orient this in the right way. Courts sentence in different functions. There are different things that are happening. So when you have an original offense, Congress directs in 3553A that the court shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph 2. All right. So we have a direct reference to purposes being relevant to the sentencing exercise. The court in determining the particular sentence shall consider, and among the things are the nature and circumstances that you talked about with Justice Alito. But clearly purposes are something different in the statute. That's in the original sentencing exercise. But then you have a situation in which the court sentences someone to a term of imprisonment. They impose supervised release in lieu of what used to be probation or whatnot as a result of the sentence. And then you have a different set of instructions in the statute for what you're supposed to do with respect to supervised release. So to start, are you supposed to consider punishment or retribution in the context of imposition of supervised release? No, Your Honor. And that's quite clear in the statute. And the reason is because the court is directed to fulfill that purpose with the prison sentence. So the person has committed an offense, a judgment about how serious the offense has been made. The court decides this length of a prison term is the appropriate retributive sanction for that and imposes that sanction. Now moving to the supervised release context about what follows. Because there is no parole, Congress said we recognize that there could be value still to the court providing rehabilitative services to an offender and at the same time to manage that transition back into society to make sure that the public is protected. So the purposes there relate to other things. You're not imposing supervised release to punish the person for the crime that they committed. That's the incarcerative term that you've already imposed. Is that right? That's correct. And then later on when we're talking about extending, modifying, those are responses then to a person's potential actions while on supervised release. And in fact, you could revoke a person's supervised release even for non-criminal behavior. That's correct. So you're not necessarily punishing them, at least theoretically, for a revocation. You are trying to figure out what is necessary to get this person to conform to the conditions of supervised release that you've imposed. That's exactly correct. And what's happening is that the initial sentencing, the judge is making their best forward-looking determination. After this person is released, what conditions are going to be necessary? What term is going to be appropriate? What's going to satisfy these purposes? So theoretically, we're completely sort of outside of the realm of punishment now. We're in the world of supervised release, and the court is being instructed through these directions in the statute that preclude consideration of punishment, that we're now thinking about rehabilitation and deterrence and the kinds of things that are necessary to operate fairly a supervised release system. That's correct. And after that initial judgment, what we're talking about is a person on supervised release. Their conduct might shift what the judge now considers is necessary to meet those factors, rehabilitation, deterrence, or protecting the public. Mr. Grosz, you're in the real world. An individual comes before a judge having violated a term of supervised release and is remanded to prison. What world does he think he's not being punished? I understand that a person probably thinks they're being punished in that world. I wouldn't dispute that. At the same time, what the district court is instructed to do is not to say, you have done something wrong here, and because of that wrongness, I'm going to measure how wrong it is, and I'm going to punish you as a result. What it's doing is trying to say, I thought initially this was going to be sufficient to rehabilitate, to deter. And now I find it's not? And now I find it's not. Instead of being free, you're going to prison. I'm going to adjust what I'm doing. I thought that initially my prison sentence— I'm adjusting what I'm doing by sending you to prison. Correct. And on the exclusio unius point, which I take as a strong one, as I read E, it says you effectively must consider these factors, which I think certainly from a linguistic perspective means that you don't have to consider other factors. I'm not sure it quite goes so far to say you must not consider other factors. Do you follow me? I do follow. Help me with that. Well, that's going back to my answer to Justice Thomas. I mean, this Court has adopted a series of decisions, guideposts, obviously, for how we can determine when that negative implication canon is at its highest. We believe it's at its highest here, and it's not just a matter of how courts review a statute. It's also the backdrop against what Congress drafted. I accept that it's its highest, but its highest, it strikes me, would only get you so far normally unless we had something extra to suggest that they need not consider the other factors. It wouldn't take you so far as to must not. And it may be particularly given that Congress has elsewhere said you must not consider other factors. What do I do about that? In this context, Your Honor, we believe this is the clearest way that Congress has spoken in the Sentencing Reform Act, and it's by— Even though when it comes to setting supervised release initially, Congress has said you may not consider certain factors? Well, in setting initially, the language of 3583C is shall consider, and then the list of factors. Yeah. Also there, it does not say shall not. Correct, but there are places where Congress says you may not consider certain factors, aren't there? I don't believe so. Not in this context. And in those situations, in other contexts, isn't that statement being made in the context of the universe of factors, the world of—the possible world of factors? And so they isolate one and say don't consider this. I thought your strongest argument on this point was the fact that the reference being made here is to a defined set. So we have 10 factors to begin with. That is the universe. And then in this particular circumstance, they leave out two. So it seems odd to believe that they still considered—they still wanted those two to be a permissible consideration under those circumstances. Yeah, that's correct, Your Honor, and I would add again that we can look at that provision in comparison to the otherwise identical probation statute. If Congress truly meant that in both contexts anything was permissive, then that language in the probation statute, to the extent they apply, is essentially the same language that we're reading into 3583C and E. So, Mr. Grosser, I think what I was thinking of, and I do want your help with this, is Congress has said in A that the factors set forth in 3553A—this is 3582A, I'm sorry— recognizing imprisonment is not an appropriate means of promoting correction or rehabilitation. There we have clear language saying may not or shall not consider certain things. We don't have that here, so what do we do about that? In Tapia, this Court did not say that that was an outright bar on considering that factor, actually. Not for certain—it is for certain purposes. Precisely. And so in Tapia, the Court recognized that 3583C was a more clear way to outright bar considering of a factor. 3582A works in tandem, obviously, with the instructions for imposing prison— So there we have a clear way of Congress telling us certain things are out of bounds. Well, what Congress did there is, in imposing prison, tell courts they can consider rehabilitative factors. But not for certain purposes. But not for lengthening or imposing— I get all that. We're going around the same tree here together. But we don't have language in this statute saying may not for any purpose. That's correct. And our position is, and I believe that when Congress drafted against the backdrop of the negative implication canon, that this was a more clear way than 3582A to exclude the nonlisted factors. Counsel, I've been thinking of this case, because I keep going back to the question that Justice Alito did, which is we have a backdrop that sentencing courts can look at almost anything. And this is not stopping sentencing courts from looking at any evidence whatsoever.  What it's saying instead is you can't use that evidence for certain purposes. That's correct. And so it's not that it's a list of factors or evidence that you can or cannot use. It's more what purpose you're using that evidence for. Correct? That's correct. And just as in the initial sentencing context, if a court, say, refused—said, I don't believe that deterrence is a proper purpose of sentencing, I refuse to consider it. That would be error, because it would have refused to follow Congress' direction. As to purpose, I think of this—courts do this all the time—with hearsay. We tell courts you can't use hearsay for the purpose of the truth of the matter, but you could use it for a lot of other reasons, correct? Correct. And we do the same thing with propensity evidence. You can look at propensity evidence. You just can't use it for the purpose of proof of propensity, but you can use it to prove intent or knowledge or a lot of other reasons. So it's not—what you are basically saying is you can use anything you want, District Court Judge. You just can't use it for this purpose. Correct. And that follows from the structure of the entire statute. As Justice Jackson brought up, the initial sentencing, A2A is satisfied. The supervised release is imposed for these additional purposes. 3583D instructs courts about how to consider what conditions they might impose also amidst A2A, because, again, this is not for retributive purpose. And you said earlier that you don't mind. It is a magic words requirement. When we admit hearsay, don't use it for the truth. We say if you're using it for the truth, you've committed error. If you're using it for another purpose, you're okay. Right. And, again, I know that that's—I'm not supposed to say this is magic words, and it isn't magic words except to the extent about how courts are reviewing what a district court does. The same as in any other appellate context, we look at the words the court used, but the fundamental point is that the words reflect a purpose. They reflect that Congress said in this context we're taking retribution off the table. That was done for the initial offense. Nothing can change about the person's conduct that would make the need to punish that original offense more stark now. And if there is new conduct that needs retributive punishment, the proper course is a new prosecution. It's not a supervised release. This is Gorsuch's point. Throughout the sentencing factors, the court routinely has said use all the three 553A factors. But it shows here not to do that. So there has to be a purpose for that. Correct. Pardon the pun of using purpose in another way. Of course, Your Honor. But if it had wanted to say everything's there, it could have said it the way it did it everywhere else, correct?  And, in fact, again, in Guzman-Chavez, the court noted by listing things in a line series, a group or associated series, and omitting others, that means the negative implication has force. That's why the negative implication has so much force here, which is if Congress didn't want to eliminate a purpose from consideration, it had a way that it used throughout all of the sentencing provisions, but it chose explicitly to exclude something. Correct. And as in Guzman-Chavez, there was no catch-all provision at the end to say, consider these and these others to the extent they apply. Nothing like that. And colloquially, even, if I may, it would be what the government's position here is courts, you must make sure you deter. You must make sure that you protect the public. You must make sure that you rehabilitate. And courts, you can decide to punish someone if you want to or if you find that it's warranted here. And I don't know how courts would be guided by that. I don't know what considerations that would be appropriate to decide that. What we have are established ways to impose rehabilitative punishment. They're an initial prosecution. Thank you, counsel. Would you agree that the purpose of general deterrence is to cause people to respect the law and obey the law? To obey the law, absolutely. All right, so how can, again, we have a contradiction in the way you read this statute. The judge shall take into account what's needed to afford adequate deterrence to criminal conduct, but the judge cannot do this, cannot revoke or modify supervised release to promote respect for the law. The need to promote respect for the law in A2A, because of what it's next to and how we read that statute together, still reflects that retributive purpose. But isn't that built into the idea of deterrence? Not the retributive purpose itself. No, but to cause people to respect the law and obey the law. In a sense, but in A2A, Congress has used respect for the law differently, and we know that simply because of the way that they drafted the statute, that these are separate purposes that courts need to fulfill. I mean, under any analysis, I think we all agree that Congress must have done something here. And if we conclude that A2A and A2B are necessarily involved in the same thing anytime we consider A2B, then Congress has done nothing. A2B, every time we consider it, will involve considering A2S. Can I get you to react to the thought that maybe what Congress was doing was reacting to potential concerns about constitutional problems? And what I mean by that is that we have a system in which judges impose penalties subject to limitations in the form of, say, the statute of maximums, right? You can only impose a term of imprisonment up to a certain point. When Congress crafted this statute to allow for supervised release and then permitted revocation, unless retribution, punishment, is sort of removed from the supervised release dynamic, wouldn't you run into a potential problem of having people being sentenced, or at least this would be an argument that the defense would make, people being sentenced in the supervised release realm above the statutory maximum? Because now what we're doing is punishing people, not just someone who gets the stat max for the initial offense, but then you're tacking on an extra two years, three years, whatever it is, in the revocation realm. And so part, I think, of what Congress might have been trying to do was to avoid that kind of problem by indicating very clearly that in supervised release we're really not about punishment, we're not trying to go, you know, run into the same kinds of concerns that you would have if you were allowing people to go above the statutory maximum. I think that's possible, Your Honor. I have a hesitation, which I'll explain. Yes. One, I do think it's possible because of the considerations, the serious constitutional questions this Court identified in Cornell-Johnson. My hesitation in disagreeing to Your Honor's question is that when Congress initially drafted 3583E, there was no revocation provision. It was terminate, modify, extend, or refer to a new prosecution. So in that context, there was no need to adopt a need for retributive punishment. Thank you, Counsel. Justice Thomas, anything further? Justice Alito? Suppose a district judge reads the kind of opinion you would like us to write and says, well, how am I going to comply with this? Okay, I'm going to write out in advance everything that I'm going to say, and I'm going to be sure never to use the magic words. Plus, I'm going to put a disclaimer on. Whenever I do this, I'm going to have a standard disclaimer. I am not taking into account this particular provision of the statute. Is the district court home free then? I believe it would be for appellate review, but the more important thing from reading this Court's opinion would hopefully be that the district court, acting conscientiously, as in my experience our judges do, actually reorient their analysis away from the retributive factors and towards the permissible factors. Reorients, the judge reorients his or her consideration away from the seriousness of the offense. But directs it to the nature and circumstances of the offense. Reorients it away from promoting respect for the law. No, you can't do that, but you can try to promote deterrence. Yes, Your Honor. The purposes of sentencing, deterrence, protecting the public, and rehabilitating would be the reorientation. You want us to write an opinion saying, judges, when you are revoking or modifying supervised release, do not try to promote respect for the law. Do not consider A2A because in that context, promoting respect for the law reflects the retributive purpose because of the context in which it's written. Justice Sotomayor? Justice Kagan? So, I mean, there are hypotheticals that we could throw at you all day reflecting some kind of mishmash of these factors. And I think that that's the concern. So if you were saying simply, quickly, to district courts what they should do, what they shouldn't do, what would that be? And also if you were providing that same kind of guidance to appellate courts, especially given in the first couple of years they're going to be looking at sentences that happened even before any opinion we would write, what would that be? So on the first question, Your Honor, about what directions of district courts, two points. The first would be a clear statement of the three permissible purposes, what their meaning is, and to follow those to direct the analysis towards those purposes. And I do believe that there's a helpful underpinning to all of those, which is forward-looking what needs to happen for the future for this person. Now, it's obviously based on nature and circumstances, their history and characteristics, what has happened before, but not because you did this before, now we need to do this in response, just what is needed to protect the public, to deter, and to rehabilitate. And then for courts of appeals, I take Your Honor's question to heart, because it is this interim period I think that's the most important. After Tapia, we haven't seen... And that was my experience in Tapia. I actually paid some close attention to what was happening, and the first couple of years people were having a hard time figuring it out, and courts of appeals were going different ways. And then it just completely ended because district courts just started doing the things that we had said to do. Right, and that's my experience as well. So in that interim period is kind of the most important of reviewing what the district courts have said, ensuring that they comply with the factors that are listed. In that interim period, if a court cites an A2A purpose, and unless it has made clear, I didn't mean those words for what it seems like, I meant it for this other purpose. At that point, we're into something like normal harmless error procedural reasonableness review, which is when a court relies on an impermissible factor, considers an impermissible factor, which is what the statute says they're not permitted to do, that's reversible. But again, even at that point, we're talking about a vacater to send it back to the district court. If it really did mean to impose the same sentence for the permissible purposes, it can do so and re-explain. Justice Gorsuch? It seems to me the upshot of the opinion we would write is say don't use the word punishment, but you can use the words protect the public, adequately deter, and the history of this defendant. Is that the gist of what we'd essentially be doing here? I believe that those are kind of the key touchstones, yes, and that, again, is towards reorienting district courts away from punishment in this context. I just don't know what it means to reorient away from punishment when you're saying I'm sending you back to prison in order to protect the public, or given the history of what you've done. And I understand that, Your Honor. What's the delta between that and saying I am punishing you? To a defendant, it may mean very little. In the context of how district courts are managing their docket and the supervision docket, I believe it's quite important because at this point, under the Sixth Circuit's rule, district courts can treat a supervised release revocation the same as in an initial sentencing where they can punish the offender for what's happened before no matter what has changed in the meantime. They can't go beyond the factual findings of the jury to issue a new sentence. That's not permissible. We dealt with that in Hayman, for example, right? We're now dealing in the context of supervised release, and it's just magic words. I appreciate that words are important, but I struggle with synonyms, and a synonym to protecting the public might be punishment. A synonym to punishment might be you're a bad person, which I can say. Your history, you're a bad person. You've done bad things. I need to deter crime. Punishment. Thank you. Justice Kavanaugh? When you consider the nature and circumstances of the offense, which you can and are supposed to, what if the district judge says, well, I'm considering the nature and circumstances of the offense, and it was a serious offense? I believe if they stop there, that's reversible error, because there's no indication that it means anything other than relying on that A2A factor. If a court is careful and says, this was a serious offense, and therefore I'm not trying to punish you, but I conclude that you need to revoke your supervision so that we can protect the public, and that's clear in the transcript, I believe that the district court would have made clear that it's not relying on an impermissible factor. But, again, the core here is what is the district court trying to do? And I do appreciate the hypotheticals. I think it's helpful to tease out the edges of this. But at the same time, this is, in a sense, normal appellate review in the sentencing context, too. Has the court relied on this or not? Has the court considered this or not? My question also gets to my, when I read A2A, I think of the three things there, the first two, seriousness of the offense and respect for the law, are almost completely overlapping with other factors that you're supposed to consider. So that leads me to think what's left is, as Justice Gorsuch just said, the just punishment. As long as you avoid the word punishment or punish, you should be okay. And two responses to that. One, I do think that the additional text is important, which is the need to reflect the seriousness of the offense, the need to promote respect for the law. Reflecting the seriousness of the offense, I believe, does bring that back into something akin to retribution and punishment. But secondly, and I know I'm repeating myself to some extent here, but Congress was doing something here when they listed these factors separately and when they omitted this one. Again, I think we can all agree Congress must have been doing something. And so the sense that because there is a sense that perhaps they overlap or surplusage, that's something Congress must have been aware of. And yet they chose to surgically remove this particular purpose from this context. Justice Speier? So mine is a practical question as well. I mean, I think Justice Sotomayor is right that we often consider evidence for some purposes, not others. And hearsay is a great example of that. But I think the questions that you're getting show a distinction between this circumstance and hearsay. Because with hearsay, it's essentially you can consider it for any other purpose, assuming other evidentiary rules don't bar it, except for the truth of the matter asserted. And here it's just saying you can't consider it for this one purpose, but you can consider it for these other synonymous purposes. So it's like in a hearsay rule if you could say you can't consider it for the truth of the matter asserted, but think of all the synonyms you want for truth. So, you know, we've pointed out the difficulties for the district judge. We've pointed out the difficulties it will pose on appellate review. What is the advantage to the defendant? Because if you can consider it for these other overlapping purposes, like the nature and circumstances of the offense, is it really going to affect the length of the sentence? Why is this important? I believe sometimes it will have the same result, but not always. And I can point to two examples, I think. The first is conditions may have changed since the offense in a significant way, where the need to protect the public, the need to deter has dropped significantly. One example would be the defendant's incapacitation or something like it. Another would be the defendant's extreme rehabilitation since the offense. But let me just stop you right there. I thought it was nature and circumstances of the offense. It sounds like you're talking about nature and circumstances surrounding the violation of supervised release. That's correct, yes. So A1 requires considering the nature and circumstances of the offense and the history and characteristics of the offender. And all of that, there could be a significant change since the offense, is my point here. If there is that significant change, then a court may think, well, to reflect the need to provide just punishment, regardless of what's changed with the defendant, I need to impose a significant punishment. But because this defendant has shown that they're rehabilitated, because this defendant is incapacitated, once I take that off the table, there's really very little need to impose incarceration. That would be one difference. The other and very practical difference, I think, for petitioner leaks, is when someone has a state court sentence or a federal court sentence for the same conduct. I understand that the statute allows the supervising court to make a new judgment on its own about whether additional time in custody or a modified supervised release is necessary to fulfill the three permissible purposes. But they may well conclude, well, the punishment's done. That other sentence also fulfills the three permissible purposes. Concurrent time is sufficient. Justice Jackson? Mr. Grostek, just to sort of flesh that out some. I mean, I perceive, and I think sentencing theory perceives, a difference between retributive purposes and other purposes. And so even though there may be overlap in some of the discussions that we've had, suppose you have a defendant who is on supervised release and discovers that he is terminally ill, terminally ill, six months to live. And he stops calling his probation officer, he stops doing all the things, and the probation officer comes back to court and says, I think this person's supervised release should be revoked because they are not doing what it is that you've required on supervised release. Absolutely a basis for revocation. But then the question becomes, from the judge's perspective, it's not going to make any difference if I incarcerate this guy for the last six months of his life because he's not going to be able to commit other crimes. It's not going to protect the public in any way. A judge who was imposing supervised release revocation for retributive purposes, even though the statute says you don't do that, would say it doesn't matter. What you've done is violated the conditions, and for that you need to be punished, and therefore back to jail. A judge who is looking at the statute and says retribution is off the table might determine not to do those things because the other purposes of punishment would not be fulfilled given this person's circumstances. Is that a concrete example of how you can separate out retributive purposes from other purposes and sentence differently as a result? Yes, I believe so, and specifically I think that relates to the promoting respect for the law in A2A, which is even if there hasn't been an offense here, because there was a court order that was violated, in some sense that's disrespecting the law, and so A2A, even if there wasn't an offense in your Honor's example committed here, would allow for punishment. If punishment was on the table, you could still impose punishment. That would be on the table, but otherwise, no. Thank you, Counsel. Ms. Hansford? Mr. Chief Justice, and may it please the Court, Section 3583E does not displace a district court's broad discretion to think about any considerations it finds helpful at a sentencing or sentence modification proceeding. Section 3583E3 authorizes a court to revoke supervised release, quote, after considering certain factors. That language makes clear that a court is required to consider the enumerated factors, but it does not prohibit the court from considering others. To take an example, if a judge tells her law clerk that the clerk may turn in his bench memo after considering the petitioner's brief, the respondent's brief, and the reply brief, that does not suggest that the law clerk is forbidden from also considering the amicus brief. And if a college physics department announces that a student may declare a physics major after completing Physics 101, Physics 103, and Physics 104, that does not suggest the student is forbidden from also taking Physics 102. Just like Section 3583E, those instructions set a floor, not a ceiling. Petitioners argue that because the Section 3553A2A factors reflect retribution, they don't belong in a supervised release revocation proceeding, and the College of Justice Jackson was getting at a similar idea. But Congress knows how to limit a sentencing decision to one that serves particular purposes, and it uses express language to do so. Congress did not use that type of language here. Nor would it make sense for Congress to prohibit a court from considering the A2A factors, which, as the discussion this morning emphasized, include the need to promote respect for the law, in determining what to do about the breach of trust that court-ordered supervision, that reflects. And in light of the deep overlap between the factors, and I think the colloquy this morning well illustrated, that that would really raise profound workability problems, and at best would devolve into a reverse magic words requirement. I welcome the court's questions. Why would Congress write a provision like this in such a roundabout way? I think the reason that Congress listed only certain factors because those were the factors that it thought would be the primary considerations across the board. So, of course, Congress was not drafting this provision just for the revocation section. In fact, when it was drafting it, the revocation provision E3 wasn't even in the statute. But the way the statute reads now is the list of factors is in the umbrella paragraph at E, and it covers the whole range of actions, terminating the term of supervision early, extending the term of supervision, modifying the conditions of supervision, as well as revocation. And I think that the discretion that Congress gave courts reflects that in some of those circumstances, a court may not think that the A2A factors, to the extent they do work beyond the other factors, need to be considered. You mentioned workability. What role should that play in our assessment of the arguments here, in our interpretation of these provisions? I think the profound unworkability of petitioner's rule, which would require parsing what a court is doing and extricating the promoting respect from the law from deterrence and incapacitation considerations that are intimately intertwined, I think should give the court a lot of pause from reading the text to say that. Now, especially here where petitioner's textual argument is really an argument of negative implication. I think that petitioners are suggesting the wrong negative implication, so the argument doesn't get off the ground. But before drawing the inference petitioners seek, I think the court should take cognizance of the fact that this would be a really bizarre thing for Congress to do in this way. I think, counsel, I'm having a little problem with this workability argument because there's four circuits. One of them pretty large, the ninth, but the fourth, the fifth, the ninth, I can't remember the fourth one, and the tenth, all of whom have the rule you say is unworkable. They seem to be functioning fine. I think the experience in those circuits well reflects the workability problems here. First of all, most of the circuits... What is the workability problem? The district court says something wrong. You have to object. Now, the three people here objected, or at least two of them objected, and the district court decided that instead of saying, I'm doing it for dual purposes, which would have made this a harmless error case, said, no, I'm not doing it for deterrence, incapacitation, or rehabilitation. I'm doing it for punishment. But if it had been objected to, it would have been fine. If it had not been objected to, we're in harmless error territory. And I don't understand that those courts have had a problem with this. I think the workability problem is extricating, even in the judge's own mind, the factors that are required to be considered, like the nature and circumstances of the offense and deterrence and capacitation from promoting respect for the law. Justice Sotomayor, I would direct you to take a look at pages 96, 98, 216 to 217, and 219 to 220 of the joint appendix, which shows how the judges in these cases were thinking about those factors, and they were all completely intertwined in their mind. Let's go back to Justice Thomas's question, which is, I see section 3553A2 normally directs district courts to consider all the relevant facts and evidence. That includes the four purposes, okay? Why would Congress have written this provision taking out two factors, only two factors, one of which is not pertinent at all? So they were being purposeful in what they were doing. And there was one factor that they took out and then put back in. Why would they have bothered to put it back in if you're right that it was always there? Because under your theory, whether they took it out the first time or not is irrelevant. It could always be considered. It doesn't make much sense to me that Congress was that precise in taking some things out and then very precise in putting it back in if you think it was always in to start with. So I would say about that is I think Congress cared about the floor it was setting. Setting the floor a little bit higher by adding in a factor means that a court must consider a certain factor in each case. Every time it has done it in every other situation, it just said consider them all. Sure. And I think the reason that Congress wanted to give a court discretion not to consider the factors in this case to the extent that they add some things beyond the overlapping factors is because Congress's view of the term of supervised release itself. I think Congress probably thought the primary purpose of that term is a period of transition and that the term of imprisonment often will fully serve their attributive end. And so when Congress was thinking about the whole range of actions, including terminating the term of supervision early or extending the term of supervision or modifying the conditions, Congress wanted to give courts the flexibility to just think about these kind of rehabilitative considerations of how well the defendant was doing. They overlap in a sense. What kind of a gift is that? I mean, part of our discussion was how much these factors overlap. So it seems like a weird thing to say that Congress went through all the trouble of omitting this factor for the purpose of allowing district courts not to consider this thing that you say is so intertwined with everything else that it's hard to separate out. Yes, and let me explain. I think that really the place where that delta is is the just punishment factor that Justice Kavanaugh was referring to because, of course, the provision has three factors. And I don't think that a court can really ever not think about the seriousness of an offense, can ever really not think about promoting respect for the law in the context of assessing deterrence, and certainly not ever think about it. You're arguing the intertwinement. What I'm saying is the intertwinement undermines your argument that Congress omitted this to relieve district courts of having to consider those things. If they're so intertwined, then why would Congress have taken this out? So two points to that. One thing I want to do is give you an example of how this might work, but I also want to note that the rule that petitioners are asking for, which is a rule that you may not consider the factors, is a really troubling one. I think that Congress could have written a statute. What I'm trying to understand is the rule that you're asking for, which is Congress had a list of four purposes. That's the given, the beginning point. And in this particular section, it omitted one. And you say it omitted one to give courts the permission not to consider it, but it can still allow courts to consider it. Ordinarily, when Congress omits something, you would think they were taking it off the table. So what we have to do is understand the circumstances under which Congress would indicate you have permission to consider something by removing it from the list. So the first thing I would say is that this statute does not give courts permission to consider various factors. That is the background rule reflected in 3661 and decisions like Kimbrough and Concepcion. So I think it would be a little bit of a different situation if this was what was giving courts authority. Precisely, but that undermines your argument. It doesn't help you. If the background rule is that you can consider everything and Congress really intended for you to be able to consider this, why would they have omitted it from this statute? I want to get back to the language that Congress would have used if it wanted to do what I think you're suggesting, Justice Jackson. But just to give an example of how this discretion might matter, consider an offender who committed an offense and went to prison for, say, a drug distribution conspiracy. Got out, is on supervision, is doing well on supervision, is complying with the conditions, and is up under 3583E1, asking for early termination. I think that the discretion the court has given, that Congress, I apologize, has given the court, is to say we're looking at how you're doing on supervision. You're doing well. We don't think we need to deter you. But we're in revocation, Ms. Hanford. We're talking about the revocation scenario. Yes. So I'm giving you an example of where this might make a difference. Can I ask another question, Ms. Hanford? I think it was something that was in part in Justice Jackson's question. But, I mean, you're saying that this is impossible, it's unworkable, and that seems in tension with your own argument. In other words, if it's so impossible and unworkable to distinguish between the mandatory and the prohibited in the way that petitioner wants courts to, it seems as though it would be just as impossible and unworkable to distinguish between the mandatory and permissive in the way you want courts to do. So either way, courts have to make a distinction, and it might be difficult in some circumstances, but if it's so impossible, it's so impossible for your purposes, too. So I don't think that's correct, Justice Kagan, because I think there's a big difference between the affirmative and the negative. The negative rule that petitioners are asking is you may not consider seriousness of the offense. You may not consider promoting respect for the law. And that is the problem. In my example, when the judge is... No, but you're saying you have to think about what you have to consider and just what you may consider. So that suggests that a court is capable of distinguishing between the two. And once you've decided that the court is capable of distinguishing the two, then the court is equally capable of distinguishing between the mandatory and the prohibited. I don't think the court would ever be capable of distinguishing between seriousness of the offense in the A2A sense and in the A1 sense. And I don't think a court is ever capable of truly disentangling promoting respect for the law from deterrence and incapacitation. I think the one place where that discretion that Congress gave here relative to the probation statute makes a difference is in considering whether something is a just punishment. I think that's the one place where they might come apart. I mean, either way, it works the same for the two arguments, this question of the difficulty of disentangling these things. Because you're requiring a court also to disentangle these things. But let me ask you another question, which is, when you say something is mandatory, what exactly do you mean by that? In other words, there are all these factors, and Congress says you shall consider these factors. Now, does that mean that the factors have to be reflected in the sentence? Or instead, can the court say, well, I'm going to reflect, or the revocation, whatever it is, or can the court say, well, this factor seems peculiarly relevant here, and I'm going to do something that reflects that factor, but this other factor seems completely irrelevant, so I'm going to toss that away. So what does mandatory mean in this context? I think mandatory means that the court must think about it, but it does not need to give it a large amount of weight. I mean, it can give it zero weight, right? I mean, it has to think about it, but it can say, for my purposes, this is irrelevant. Yes, I think that's... Yeah, so that's got to be the case, right? And once you're in that world, the difference between mandatory and permissive is vanishingly slim. Because in both cases, a court is doing the same thing, which is saying, like, I'm going to pick up the factor and look at it and decide whether it's completely irrelevant or whether it's relevant and how to take it into account. And once that becomes vanishingly slim, your argument begins to seem sort of peculiar. I think the difference is fairly thin, especially because all the factors are going to be...  But I don't think it's nonexistent. And so in the early termination of release example I was giving, the court might say, I am not going to think about how serious your initial... So here's the difference. In one set of circumstances, the judge says, I am going to choose to think about whether this is a just punishment, and so you're asking for early termination, but because your offence was a serious offence and I think that the term of imprisonment you served was kind of on the low end, I'm not going to terminate your sentence early. Or the court might say the opposite. They might say, you know, I'm a little bit on the fence on deterrence and rehabilitation, but I think the term of imprisonment you already served is on the high end, so I actually am going to terminate the sentence early. And so that's the just punishment piece of it that I think Congress left to be discretionary in the supervised release context but is required to be considered in the probation context, and I think the reason for that is that Congress... Ms. Hansworth, let me ask you a question that you probably won't like, but it's just a hypothetical. If, hypothetically, the government loses, are there pitfalls that you would want us to take into account in writing an opinion in favor of the petitioner? Yes, absolutely. So I really think that the textual argument petitioner is making is extremely troubling and it's really unclear what district courts should be doing under that rule. I really think that the way to capture this intuition to the extent that you have petitioner's intuition that retribution shouldn't be doing any additional work is not to take petitioner's argument that you may not consider seriousness of offense, you may not consider respect for the law, you may not consider just punishment, but it would be to have a provision that is written in the way 3583D is written, that to the extent that the revocation involves no greater deprivation. So a court may revoke to the extent that the revocation involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in sections 3553, A2B, A2C, and A2D, and I think that that formulation addresses some of the workability concerns because it is not saying you just can't consider the other factors, it just says you can't do that extra work. But I think the existence of that provision, the very neighboring provision that courts set out for conditions of release shows that that is now what Congress is doing in the language here. Okay, but I just wanted to know how we should write it in a way, if you lose, that would satisfy the government that we weren't resolving open questions. I think the least bad approach would be to adopt that formulation in 3583D. I don't think you can get there textually, but I do think that that's how you would avoid the workability issues. I still think that this would not be a helpful rule for courts. I think it would still devolve to labels and not substance. I know you didn't give the argument away. But I also want to note that the consideration of just punishment is not a factor that necessarily harms the defendant. It could also benefit the defendant. So, for example, at a revocation hearing, consider an offender who has a not very serious initial offense but a very, very serious violation. The court might look at that violation and say, boy, deterrence concerns are off the charts. Rehabilitation, you really need a lot of rehabilitation. Incapacitation is really important. And so I would impose a very lengthy term of re-imprisonment, but your initial offense is not that bad. And, of course, any sanction I impose at a revocation is supposed to be justified by reference to your initial offense. And because your initial offense is not that serious, I just don't think that's a just punishment. I don't think that's the right result. And I think Petitioner's argument would take that off the table. I think that's the reason that Congress did not write the statute in that 35 PDHC case. Your friend said, I think near the end of his argument, he said we can all agree that Congress was doing something. Are you part of that all? Absolutely, Mr. Chief Justice. I think Congress was doing something. It was giving the court that additional discretion to reflect its view that the term of supervision sometimes is really purely rehabilitative, and sometimes you are just looking at does this offender need a GED or does he need some sort of housing support, and you're not necessarily thinking punitive thoughts when you're taking the range of actions. But I think when you get to revocation, it becomes a lot harder to think of Congress's purpose as primarily rehabilitative, because one thing that is crystal clear from the statute is that Congress did not think imprisonment should be used to rehabilitate. That, of course, is 3582 as the court recognized in Tapia, and so the idea that Congress was really trying to further the rehabilitative purposes of the term of supervised release with re-imprisonment feels really strange. Well, I mean, the different provisions, I mean, obviously, apparent there's a lot of synonyms that overlap, but A does kind of look backward, right? I mean, the offense, the punishment, and B, C, and D are looking forward. What's deterrence, protecting the public, and all that? And it seems to me that in leaving A out, Congress meant to focus going forward when you're talking about revoking. Mr. Chief Justice, even if that is what Congress was thinking, I think Congress had the ability to act with a lighter hand by requiring the things that thought were most important or with a heavier hand by forbidding all others, and I think the text here plainly does the first, particularly when you contrast it to the various provisions throughout to do what the heavier-handed approach would do. Well, I think plainly is a real reach in this situation. It is a significant step, I think, to just leave A off the table. I agree that it's a significant step and that it gives courts discretion, but I do think that discretion has a lot more weight and context outside of revocation because of the nature of revocation. It is very strange. Even if you put limits into your opinion against this, it is still very strange to tell a court that is sending someone to prison that they cannot consider whether that term of imprisonment is just. And I think to go back to the workability concerns I was discussing with Justice Sotomayor, it's really the height of absurdity what you see in the courts that are trying to apply the rule on the other side. You see courts parsing things like, is a reference to rule of law suggesting respect for the law? Is a reference to whether this result is just suggesting just deserts or that this punishment is deserved? And I think that that's a really strange thing to be parsing. Defendants are making arguments. There's a First Circuit case we cite on page 37 of our brief where the court did what courts primarily do at a revocation hearing, which is complained about the number of violations and the disrespect for the court that those violations reflect. And the defendant argued that considering the pattern of violations and flouting court-ordered supervision can't be considered because it's a form of promoting respect for the law. So I think you're either in an absurd situation where in a topsy-turvy world where you're looking at all, where you're not considering kind of the core of the reasons for the revocation or you are just looking for magic words and a court that is actually thinking all these things and what the just result is in this case is forced to use particular words or issue certain disclaimers as Justice Alito indicated. Can I ask a question to go back to Justice Thomas' question about workability because it's important for me? What role workability plays here? Is it my understanding, I think, is that workability comes into play when we think about what significance to give the negative implication canon in this particular case. But you tell me how you think workability comes in or at least that's one key part of it because negative implication canon, we often look to context to determine whether to draw it. The context here would include, I think, how workable this is and obviously it's not completely unworkable, the other side's position, but your point is it borders, you used the word absurd, not workable, magic words. Does that come in on negative implication? I think that's fair, Justice Kavanaugh, that you can think of it as part of the context and I think you can also think of it as kind of a gut check as was this really what Congress was intending to do or is the fact that it didn't use the much more direct formulations it used elsewhere really an indication that it was trying to accomplish something quite different and just give the courts a little bit of discretion but not tie courts' hands on anything because that, of course, is a really big step to tell a court that it can't think certain thoughts at sentencing. Yeah, they're probably going to think the thoughts anyway. On the three things listed in A2A, seriousness of the offense, respect for the law, and just punishment, on the first two, seriousness of the offense and respect for the law, I think I asked your friend on the other side, those are going to be almost completely overlapping, I think, with other things listed. But then the third one, just punishment, maybe not so much. And so how do I analyze the case if I think I look at A2A and think two are completely or largely overlapping and the other one you could draw some kind of line? I think if you think that, Justice Kavanaugh, we absolutely win because petitioners' rule, the negative implication petitioners are considering is you may not consider the factors in 35, 53, A2A. So you may not consider any one of them. And if any one of them is impossible, I don't think that argument can hold up. I don't think that that's quite right, Ms. Hansford. I mean, think of this as like a Venn diagram. You know, you have two circles and they intersect and there's some overlap. But as long as you're within your circle, you're fine, whether it's the non-shaded area or the shaded area. But when you're outside your circle, as you would be, if you were starting to think about just punishment, then you're not fine. I appreciate that intuition, Justice Kagan, but I think that if a sentence says you may not consider A, B, or C, that means that you cannot consider any one of them. And I think that the way to capture... To the extent that they overlap, to the extent that it's like one and the same thing, you can consider it because you can consider all the other factors and you're just doing the same thing. To the extent it's not the same thing, then you can't consider it. So in the area of overlap, you're golden. It's in the area of non-overlap that you're not. Justice Kagan, and I think the exact way to capture that intuition, if that's what Congress was trying to do, is of course the 3583D formulation, that to the extent that the factors reflect more of a deprivation of liberty than is reasonably necessary for the enumerated purposes. That to the extent language is critical and that's what's missing here and what is in the nearby provision. And that's how I think Congress would do it if it was trying to do what you're suggesting. And it was trying to do what you're suggesting, but only for the conditions of release. It wanted those not to be increased based on retributive thoughts, but it was not doing that for the term of imprisonment itself. Sanford, can I just ask you, when 3583A2A says to reflect the seriousness of the offense, and we've had some question about how you can revoke without doing that, what offense do you take that to be referring to in the revocation scenario? Is it the original offense or is it the offense that the person is being brought to the court? It's the original offense of conviction. I think the statute is consistent in referring to offense to mean the original offense of conviction. So why couldn't you base a revocation decision on what happened that is leading to revocation and not the seriousness of the initial offense? You sort of seem to suggest that there's no way you could revoke and send somebody back to prison without considering what you're now saying is the original offense, and I don't understand that. So two points. First, I think on petitioner's view that this is an exclusive universe, the seriousness of the violation also couldn't be considered because of... No, I understand. I'm talking about your view. You're saying that there's no way to take out the seriousness of the offense, and you're now saying the seriousness of the offense is the initial offense. Yes. But you concede that supervised release is a totally different thing than the initial offense. Yes. So why couldn't you revoke without looking at the initial offense? Two reasons you can revoke without looking at the seriousness of the initial offense. 3553A1 also refers to nature and circumstances of the offense, which is that same original offense of conviction. So the overlap is exactly the same. It's the offense in A1 and in A2A. All right, so nature and circumstances is the facts related to the original offense. Seriousness of the offense is a relative consideration. How serious is this relative to other kinds of offenses and other people and whatever? So, I mean, those are two different factors in this very statute. They're listed differently. Sure. So I think the other reason that Congress couldn't have meant for that to be excluded is that E3 actually ties the maximum term of reimprisonment to the severity of the initial offense, which is another way it shows that a court must be allowed to consider it. But in practice, just to flesh this out, why would a court think about the seriousness of the offense even beyond the requirement to do so? It might cast light on the nature of the violation. So consider an offender whose violation is carrying a weapon. If that offender's initial offense was a murder or assault on a domestic partner with a weapon, I think that a court would perceive that violation very differently than if the underlying offense was fraud. So the severity of the underlying offense can provide critical context in assessing the violation and in informing a court's decision about what to do about the violation. I see almost complete overlap with all three. I mean, seriousness of offense, as you say, appears through the first one, nature and circumstances of the offense and the history of the offender, basically. The second one, respect for the law, deterrence. Just punishment seems to me to capture all those things, right? Look at the defendant, look at his offense, look at the need for deterrence and capacitation to protect the parties. It's all the same thing. It's all the same thing. But some courts are doing it. They follow this rule. And you say that that's proved unworkable. And I wanted you to spin out how exactly it's proven unworkable because judges are very good with words. And when you tell them they can't use certain words, if there are certain magic words, they will avoid those words. They will use synonyms for those words. So why should we worry? All we're doing is requiring judges to pull out a thesaurus. If I may respond, I think that you're getting no value by asking judges to pull out a thesaurus. I understand that it's a hoop-jumping exercise, but some circuits have done it. Tell me how it's proven unworkable on the ground. So I think that it hasn't had a huge practical effect on the ground so far. And we did oppose review in this case. But I think that part of the reason it hasn't had a huge practical effect is that courts have generally just found a way to affirm. And frankly, a lot of these have been coming up in plain air posture because most offenders don't think to make this objection at all. And other courts have imposed other atextual limits that petitioner disclaims, like that it has to be the primary consideration. And so just referring to it as not enough, but you have to refer to it, I don't know, five times. And so I think there have been limits. I think as soon as this court announces a different rule, every offender will be raising this. And, of course, there are a huge number of these revocation proceedings, and this will be coming up. There will be a huge hoop-jumping exercise that I don't think will benefit offenders or affect the substance, but there will be a lot of court of appeals work to parse the particular words that a district court used at a revocation hearing. Thank you, counsel. Justice Thomas? Justice Alito, anything further? Justice Sotomayor? Justice Cain? Just to pick up on Justice Barrett's question, what Justice Gorsuch was just saying, you know, if you lose, I think telling district courts, just avoid the word punish or punishment, and you're good to go. And if it's not objected to, it's not plain error if you have used it, is probably what you're looking for. But tell me what else. I mean, I think if we're losing, we would ask the court to give as specific of instructions as possible for what words courts should avoid. I think the nature of a revocation hearing is often it's the court kind of instructing the offender on how to do better, and it's a really particularly strange type of hearing for a judge to have to prescript, as Justice Alito was indicating. And so I do think that whatever the magic words are, yes, courts will learn to avoid them, but I really think that will skew the process, particularly if it suggests that on the substance, courts should not interfere with it. Well, I think the only magic word is punish, right? The only reverse magic word, as you put it in your brief. Punish or punishment. And I guess one other thing I would note about punish or punishment is there's some sense that retribution is a hallmark of punishment, but of course deterrence is another hallmark of punishment and another core feature of punishment. So it's a little bit weird to have that be the wrong word because when something is used for deterrent as opposed to compensatory purposes, we often think it's punitive, like punitive damages. So I'm not really sure why punish... I think you're arguing, counsel, why you should win, but that's good enough. Thanks. That's fair. Justice Jackson? Thank you, counsel. Rebuttal? Thank you, Mr. Chief Justice, and I want to respond to the repeated questions about the hoop-jumping exercise idea and the magic words idea. Is there anything really happening here? And I'd start with what this Court has said in numerous cases, with Granderson and Roy Lee Johnson and Gosling Peretz, that supervised release was created for different purposes, both different purposes than parole that came before and different purposes than a prison sentence that it precedes. And Subsection C, 3583C, is the codification. It's Congress stating those purposes. It's where I believe all the Court statements regarding that come from, and it's that the Court shall consider A1, A2B, A2C, and down the line. In Tapia, this Court observed that that meant that retribution was off the table. The Senate report confirms what we see in the text, again, that supervised release, quote, may not be imposed for purposes of punishment. And then as we follow down through 3583, everything that Congress wrote follows that same beginning. In D, courts can impose conditions but not for A2A purposes. My friend on the other side does note D's statement to the extent that that actually introduces a list of three different things that the Court has to satisfy. So I'm not sure that the Court can really read to the extent that as directly related only to the greater deprivation of liberty for those purposes. But the important point here is that the conditions are unrelated to A2A. They're only for the other purposes. And then when we get to E and the options of terminating, modifying, or revoking, if an offender, while on supervision, now their conduct has indicated some need for a change from what the Court originally thought was appropriate, Congress gave courts tools to do that, but again for those same purposes and not the retributive purpose. That's the core of what Congress was excluding in the statute. It's what Congress said it was doing in the Senate report. It's what this Court observed in Concepcion and Tapia. And we'd ask the Court to reverse the judgments below on that basis. Thank you, Counsel. The case is submitted.